531 A.2d 504

In the Interest of Enjoli BENDER, a Minor.

Appeal of Stephanie BENDER, Lebanon County Children and Youth Services.

Superior Court of Pennsylvania.

Submitted June 15, 1987.

Filed Sept. 25, 1987.

Robert B. Keys, Jr., Lebanon, for appellant.

Samuel A. Kline, Lebanon, for appellee.

Before DEL SOLE, MONTEMURO and HESTER, JJ.

DEL SOLE, Judge:

Enjoli Bender was declared to be a dependent child by an Order issued by the Court of Common Pleas of Lebanon County on February 10, 1987. In this appeal, Stephanie Bender, (Enjoli's mother), contends that the dependency of her daughter was not established by clear and convincing evidence at the above noted hearing. In particular, she argues that the trial court erred in permitting Dr. Cal Robinson, a staff clinical psychologist at Philhaven Hospital, to testify on behalf of Lebanon County Children and Youth Services (hereinafter, LCCYS) at the hearing, over her objection.

Mrs. Bender was evaluated by Dr. Robinson, at the request of LCCYS, following a dependency hearing regarding Enjoli's sister, Amber, which took place on October 30, 1986. Due to concerns which arose at that proceeding, the trial court directed in its October 30th order, that LCCYS begin to monitor Enjoli's situation at home and school. The record reveals that Mrs. Bender initially consented to having the psychological evaluation,. but at the dependency hearing she revoked her consent to release the evaluation, asserted her client-psychologist privilege and objected to Dr. Robinson's testimony.

The psychologist-client privilege asserted by Mrs. Bender is set forth in 42 Pa.C.S.A. Section 5944 as follows:

No person who has been licensed under the act of March 23, 1972 (P.C. 136, No. 52) to practice psychology shall be,

without the written consent *of his client,* examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client. (Emphasis added).

The Pennsylvania Supreme Court in *In Re B,* 482 Pa. 471, 394 A.2d 419 (1978), held that a mother who *voluntarily* submits to an evaluation by a court-appointed expert, who is to evaluate her ability to provide adequate care for her child, would not be detrimentally relying on any statutorily created privilege, and as such the privilege would not bar the admission of such evaluation in a juvenile proceeding. In the case sub judice, the trial court held that since Mrs. Bender had consented to the evaluation, her objection to Dr. Robinson's testimony was properly overruled.

Furthermore, this court's recent holding in *Matter of Adoption of Embick,* 351 Pa.Super. 491, 506 A.2d 455 (1986) is applicable here. In *Embick,* the appellants also argued that the admission of the testimony of the court appointed psychologist (Dr. Piper) violated their client-psychologist privilege. The *Embick* court handled the question of whether the privilege should be applicable where appellants agree to be examined by a psychologist at the request of an Agency as follows:

> ..., there has been no showing that appellants were Dr. Piper's clients in any sense of that term. They were not seeking treatment, or counseling, or advice for any mental or emotional problems; ... They went to see Dr. Piper because they were asked to do so by the Agency, and for the limited purpose of examination. We therefore hold that under the facts of this case, the relationship between appellants and Dr. Piper was not the type of relationship contemplated by the statute which confers the privilege. *Id.,* 351 Pa.Superior Ct. at 500, 506 A.2d at 460.

■ The statutory privilege invoked by Mrs. Bender clearly contemplates the existence of a true psychologist-client relationship before communications revealed to the psychologist must be kept in confidence. Like the parties involved in *Embick,* there was no such relationship in existence between Mrs. Bender and Dr. Robinson. Mrs. Bender seeks to distinguish *Embick* from the instant appeal by noting that the appellants therein were told, at the very least, that the psychologist would report the results of the evaluation back to the agency, if not directly to the court. Therefore, unlike herself the *Embick* appellants had no expectation of privacy. We find no merit to this argument. Regardless of whether or not Dr. Robinson or anyone else did explicitly inform Mrs. Bender, the circumstances under which the tests were requested certainly gave her notice that the results would not be kept in confidence. The tests were requested by LCCYS to aid in the determination of whether Mrs. Bender was able to provide proper parenting for her children. It is self evident that the tests would be of no use if the results could not be disclosed to LCCYS and the court.

We are aware that the proceeding in *Embick* was an involuntary termination of parental rights, whereas the case sub judice is a dependency action. However, in both situations the court is concerned with proper placement of the child and the possibility of keeping the family together. Therefore, we have no problem applying the reasoning stated therein to dismiss appellant's arguments.

Finally, even if we were to concede that a relationship did exist, another reason why appellant's objection must fail is that there are certain instances where the statutory psychologist-client privilege must yield to disclosure of the communications. If the injury that would inure to the relationship by the disclosure of the communication is less that the benefit thereby gained for the correct disposal of litigation, then disclosure must be permitted. 8 WIGMORE EVIDENCE § 2285 (McNAUGHTON'S rev. ed. 1961). Here, where the court is concerned with whether the child is

presently without proper parental care and, if so, whether that care is immediately available, we must hold that the injury that would inure to the relationship by the disclosure of the communication is not greater than the benefit thereby gained for the correct disposal of the delicate and complicated societal issues before the court in a case such as this. *Embick, supra,* 506 A.2d at 461.

For all of the above reasons the trial court was correct in its decision to allow the psychologist to testify.

We shall now address appellant's contention that there was insufficient competent evidence admitted during the dependency hearing to establish the dependency of Enjoli Bender.

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In Re Frank W.D.,* 315 Pa.Super. 510, 517, 462 A.2d 708, 711 (1983) (Citations omitted).

In the instant case, the trial court directed in an Order dated October 30, 1986 that LCCYS monitor Enjoli's situation at home and at school. This directive came as a result of circumstances apprehended in an earlier proceeding involving Mrs. Bender's other daughter, Amber, who was found to be a dependent child. Mrs. Bender interfered with the Agency's attempts to fulfill the court's order, thereby causing the Agency to suspect that Enjoli was without proper parental care and control necessary for her physical well being. It was at this point that the Agency requested Mrs. Bender be evaluated by Dr. Robinson.

The trial court found the child to be dependent based upon the testimony of Dr. Robinson and the testimony and

conduct of Mrs. Bender. Dr. Robinson testified at great length about Mrs. Bender's inability to care for her children and he felt that she was not psychologically mature enough to place the child's needs above her own. (N.T. 9). Furthermore, he stated that she was manipulative, impulsive, self-centered, and indifferent to the welfare of others and that she is often antagonistic, caustic, and vindictive. (N.T. 8). It was also his opinion that Mrs. Bender was not able to meet the emotional needs of her children. (N.T. 7).

There was also repeated evidence that Mrs. Bender thwarted LCCYS' access to Enjoli (N.T. 19, 22, 23, 57) and that she would not allow Enjoli to be evaluated at Philhaven, as requested by LCCYS.

We therefore hold that the trial court's conclusion that there was clear and convincing evidence of the dependency of Enjoli was correct.

Order affirmed.