**M., M.D., Petitioner,**

v.

**STATE BOARD OF MEDICINE,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1998.

Decided Feb. 26, 1999.

Donald J. Martin, Norristown, for petitioner.

Janet M. Sloan, Harrisburg, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., JIULIANTE, Senior Judge.

PELLEGRINI,[1] Judge.

M., M.D. (Dr. M) appeals from an order of the State Board of Medicine (Board) granting the request for a protective order from C.D., M.D., Dr. M's former patient (C.D.), to prevent Peter C. Badgio, Ph.D. (Dr. Badgio) from testifying before the Board as to his evaluation of C.D. made at the behest of Dr. M for use in a federal civil action because a psychotherapist-patient privilege existed between C.D. and Dr. Badgio.

In December 1993, C.D. filed a complaint against Dr. M, a psychiatrist, psychoanalyst and psychotherapist, with the Bureau of Professional and Occupational Affairs (Bureau), concerning treatment provided to him by Dr. M in the 1990's.[2] The conduct at issue involved Dr. M allowing C.D. to perform physical examinations upon him, including genital and rectal examinations. Dr. M alleged that this type of role-playing was an appropriate part of C.D.'s outpatient psychotherapy treatment because he was a medical doctor.

---

1. This case was reassigned to the author on January 27, 1999.

2. C.D. treated with Dr. M from approximately September 1989 until February 1993.

In February 1995, C.D. filed a federal civil action against Dr. M arising out of the same alleged facts and course of treatment as those recited in C.D.'s complaint filed with the Bureau. During the course of discovery for the federal lawsuit, Dr. M retained Dr. Badgio, a licensed psychologist, to evaluate and examine C.D. and, as a result, Dr. Badgio prepared a written report that was furnished to Dr. M's counsel, Dr. M and C.D.'s counsel.[3] The report was also furnished under seal to the Chief Hearing Examiner assigned to the case as an offer of proof. In November 1997, the Bureau filed an administrative complaint against Dr. M charging him with four instances of unprofessional conduct stemming from his psychiatric care of C.D. in violation of Section 41(8) of the Medical Practice Act of 1985(Act).[4]

Dr. M filed an answer with new matter alleging, essentially, that his conduct was within the bounds of appropriate therapeutic treatment.[5] During pre-hearing discovery,

Dr. M identified Dr. Badgio as an expert witness retained for the administrative proceeding and revealed that he had evaluated C.D. during discovery in the federal lawsuit. However, Dr. Badgio refused to testify during the proceeding[6] without C.D.'s consent or a court order for fear of endangering his own professional license by divulging the information that C.D. gave him during the interview when he was initially retained by Dr. M in defense of the federal lawsuit. Dr. M then filed an application for an order directing Dr. Badgio to produce his report and testify before the Board, which the Board ultimately granted, but it also notified C.D. that he would be allowed to seek a protective order from the Board pertaining to the disclosure of information developed by Dr. Badgio.[7] C.D. then filed for and the Board issued an order granting his request but "certified" the question of whether a psychotherapist-patient relationship existed between C.D. and Dr. Badgio to this Court.[8]

3. Dr. Badgio also provided C.D. with a copy of his entire file and, in return, C.D. signed a release discharging him of any liability resulting from his furnishing a copy of C.D.'s medical file. C.D. also gave up his right to sue Dr. Badgio based upon any of his opinions or anything else contained in those files.

4. Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.41(8). The instances of unprofessional conduct were as follows:

· unprofessional conduct by failing to conform to a quality standard of the profession;
· unprofessional conduct by practicing medicine with reckless indifference to the interests of a patient;
· unethical conduct by departing from or failing to conform to an ethical standard of the profession; and
· unprofessional conduct by failing to maintain adequate medical records constituting a departure from or failure to conform to the quality standard of the profession.

The Bureau also found that Dr. M violated the Board's regulations promulgated at 49 Pa.Code § 16.61(a)(6) [relating to unprofessional conduct including practicing medicine fraudulently or with reckless indifference to the interests of a patient on a particular occasion or negligence on *repeated occasions*] *and imposed penalties.*

5. Dr. M asserted that the physical examinations were done in the course of treatment for the purpose of achieving a "breakthrough" that had not been reached by traditional talk therapy, and that it was provided only after four months of lengthy discussions between himself and C.D.

6. After contacting the American Psychological Association, Dr. Badgio was advised not to testify.

7. The Board specifically cited Section 6155 of the Judicial Code, 42 Pa.C.S. 6155, which provides in relevant part:

(a) **Protective order.**—Any patient whose medical charts or records are copied and delivered pursuant to this subchapter, any person acting on such patient's behalf and the health care facility having custody of the charts and records shall have standing to apply to the court or other body before which the action or proceeding is pending for a protective order denying, restricting or otherwise limiting access to and the use of the copies or original charts and records. (Emphasis in original).

8. In certifying this matter to this Court, the Board stated that, "[t]he questions of whether [C.D.] has waived the therapist-patient privilege and whether he [Dr. Badgio] may testify are hereby certified to the Commonwealth Court because the Board is of the opinion that this Order as well as the Board's July 13, 1998 Order involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this matter." However, the order failed to contain the language required by Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), for seeking permission to take an interlocutory appeal. After denying Dr. M's application for hearing/reconsideration on this issue, the Board

This appeal by Dr. M followed.[9]

Dr. M. contends that the Board erred in granting C.D.'s request for a protective order because no psychotherapist-patient relationship existed between C.D. and Dr. Badgio since C.D. was not seeking treatment or counseling from Dr. Badgio, but was being evaluated at his behest to help him prepare for his defense in the federal lawsuit that C.D. had initiated against him. The psychotherapist-patient privilege [10] was created by statute and provides for the nondisclosure of confidential communications relayed to psychotherapists in this Commonwealth. That statute specifies:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psy-

chologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.[11]

 Explicit in the psychotherapist-patient relationship [12] is the requirement that the party seeking to invoke the privilege is the "client" of the psychotherapist. Although not defined in the statute, a "client" has been characterized as "an individual who employs a professional to provide advice and assistance." *Fellowship International Mission, Inc. v. Lehigh County Board of Assessment Appeals*, 690 A.2d 1271, 1275, n. 4 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 549 Pa. 706, 700 A.2d 444 (1997) (*citing* BLACK'S LAW DICTIONARY 254 (6 th ed.1990)). In the context of a psychotherapist, the client must be seeking treatment, counseling or advice for a mental or emotional problem. *In the Interest of Bender*, 366 Pa.Super. 450, 531 A.2d 504 (1987); *Matter of Adoption of Embick*, 351 Pa.Super. 491,

---

amended its order to insert the required language of Section 702(b).

**9.** Our scope of review of a decision by the Board is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Robert Starr, M.D. v. State Board of Medicine*, 720 A.2d 183 (Pa. Cmwlth.1998).

**10.** There are four criteria that must be satisfied to justify an evidentiary privilege:
- the communications must originate in confidence that they will not be revealed;
- confidentiality must be essential to the full and satisfactory maintenance of the relationship between the parties;
- the relationship must be one which the community believes ought to be sedulously fostered; and
- the injury that would inure to the relationship by the disclosure of confidential information must be greater than the benefit to be gained for the correct disposition of the impending litigation.

J. WIGMORE, EVIDENCE, § 2285, at 527 (J. McNaughton rev. ed.1961). The first three prongs of this test depend on the establishment that a treatment relationship exists.

**11.** Act of July 9, 1976, P.L. 586, *as amended* by the Act of Dec. 22 1989, P.L. 722, 42 Pa.C.S. § 5944.

**12.** Our Superior Court has addressed the importance of the psychotherapist-patient privilege in *Commonwealth v. Fewell*, 439 Pa.Super. 541, 654 A.2d 1109 (1995) stating:

> The [psychotherapist]-patient privilege, which was modeled after the attorney-client privilege, codified a strong public policy that confidential communication made by a patient to his psychiatrist should be absolutely protected from disclosure.... We have previously explained the rationale for this privilege:
>
>> The privilege afforded by § 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist [and psychiatrist]. By preventing the latter from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure.

> *Id.* at 1112–13 (*quoting Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120, 128 (Pa. Superior Ct.1987), *petition for allowance of appeal denied*, 518 Pa. 617, 541 A.2d 744 (1988)); *see also Commonwealth v. Simmons*, 719 A.2d 336 (Pa. Superior Ct.1998). In *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the United States Supreme Court recognized the psychotherapist-patient privilege for confidential communications under federal law.

506 A.2d 455 (1986), *petition for allowance of appeal denied,* 513 Pa. 634, 520 A.2d 1385 (1987);[13] *see also* Stephen A. Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists,* 66 Va. L.Rev. 597, 620 (1980). A court-ordered examination does not invoke this privilege because treatment is not contemplated in conducting the examination. *Embick; Bender; see also* Samuel J. Knapp, Leon VandeCreek & Perry A. Zirkel, *Privileged Communications for Psychotherapists in Pennsylvania: A Time for Statutory Reform,* 60 Temp. L.Q. 267, 286 (1987).

■ Under the facts of this case, C.D.'s evaluation by Dr. Badgio did not meet the criteria necessary to create a psychotherapist-patient relationship. C.D. did not seek out Dr. Badgio for treatment or counseling and he was not examined for therapeutic purposes but as a result of the defense's request in the federal civil action. To the contrary, C.D. was initially opposed to undergoing testing until he was persuaded to do so by his attorney. When he agreed to submit to psychological testing with Dr. Badgio, C.D. testified that he understood:

> [Dr. Badgio was] a neutral person coming in for the [federal] civil suit only, to do psychological testing to determine the possibility of damages related to the therapeutic experience and that experience with [Dr. M]. It [the psychological evaluation] was to be used for the [federal] civil suit, and the civil suit only, and that [he] was a person who had no particular relationship with either myself or the other individuals involved in the [federal] civil case.

C.D. could not have had a reasonable expectation that Dr. Badgio's evaluation of him would be kept confidential when that evaluation was made in connection with a federal lawsuit and taken and paid for by the opposing party, Dr. M. Even though C.D. may have believed that Dr. Badgio's evaluation would only be used for the federal lawsuit,

because no psychotherapist-patient privilege existed with Dr. Badgio, the Board cannot deny access to the report on that basis. Because C.D. was not Dr. Badgio's client within the meaning of the statute, no psychotherapist-patient privilege existed.[14]

## ORDER

AND NOW, this 26th day of February, 1999, the order of the State Board of Medicine at No. 638–49–97 dated August 6, 1998, is reversed.

JIULIANTE, Senior Judge, dissenting.

I respectfully dissent. I disagree with the Majority's conclusion that C.D.'s agreement to be evaluated by Dr. Badgio only for purposes of the federal civil action constituted a complete waiver of confidentiality regarding the results of that evaluation for purposes of any proceeding, including the Bureau's disciplinary proceeding before the Board against Dr. M. As acknowledged by the Majority, it was C.D.'s understanding that Dr. Badgio was a neutral person coming in for purposes of the "federal civil suit only" to do psychological testing to determine the possibility of damages related to C.D.'s therapeutic experiences with Dr. M, and that the results of Dr. Badgio's evaluation were to be used for the civil suit only, as reflected by C.D.'s motion for protective order, wherein he stated:

> I wish to file a motion for protective order objecting to the disclosure of any information (medical records, reports and testimony) by Peter Badgio, Ph.D. as it applies to Docket No. 0638–49–67, File No. 93–49–03892, Court of Pennsylvania Bureau of Professional Affairs v. [Dr. M], respondent.
>
> I agreed to an evaluation by Peter Badgio only for the purpose of determining damages during discovery of the federal civil action suit against [Dr. M]. The evaluation

13. Although *Bender* and *Embick* involved child custody proceedings, the type of case in which the psychotherapist-patient privilege is claimed is irrelevant as to whether the privilege does or does not exist.

14. Because we have concluded that a psychotherapist-patient privilege did not exist between C.D. and Dr. Badgio, we need not address Dr.

M's remaining arguments that: any psychotherapist-patient privilege is waived because C.D. caused the action before the Board to be initiated; neither the Bureau nor C.D. can invoke the privilege to limit his defense; and without the report he is denied exculpatory evidence in violation of his due process rights.

was agreed upon to be used for no other purpose than the civil lawsuit.

*In addition, when I initially agreed to testing, I was under the impression that Peter Badgio was a neutral examiner with no relationship to myself or to [Dr. M].* I had since learned that Peter Badgio was at one time during his training a student of [Dr. M's]. If this information were revealed to me prior to my meeting with him, I would not have agreed to an evaluation by Dr. Badgio in that he misrepresented himself as a neutral third party.

I also object to the idea of introducing the results of psychological testing conducted in June of 1995 during a period of severe emotional distress (discovery and deposition for the civil case) and attempting to apply the results to "therapy" that was conducted from 1991 through 1993. This psychological evaluation was conducted greater than four years after I had my first encounter with [Dr. M] and should not be used to speculate on issues related to the current case before the Board ....

(C.D.'s July 20, 1998 Motion for Protective Order; R.R. 161a) (emphasis added). As reflected by his motion for protective order, C.D. did not agree to permit Dr. Badgio to testify regarding his evaluation of him in the Bureau's disciplinary proceeding against Dr. M before the Board. Section 9(c) of the Medical Practice Act of 1985,[1] relating to the subpoena power of the Board in disciplinary proceedings, provides in part:

> The board shall have the authority to issue subpoenas, upon application of an attorney responsible for representing the Commonwealth in disciplinary matters before the board, for the purpose of investigating alleged violations of the disciplinary provisions administered by the board. The board shall have the power to subpoena witnesses, to administer oaths, to examine witnesses, and to take testimony or compel the production of books, records, papers and documents as it may deem necessary or proper in and pertinent to any proceeding, investigation or hearing held by it. *Medical records may not be subpoenaed without consent of the patient or without order of a court of competent jurisdiction on a showing that the records are reasonably necessary for the conduct of the investigation. The court may impose such limitations on the scope of the subpoena as are necessary to prevent unnecessary intrusion into patient confidential information ....* (Emphasis added.)

Despite the language of Section 9(c) requiring a showing that the records are reasonably necessary for the conduct of the investigation, the Majority would require the Board to compel Dr. Badgio to testify, without limitation, concerning C.D.'s mental state, even without a showing such evidence is relevant, on the ground that C.D. has no expectation of privacy at all regarding that information for purposes of any legal proceeding whatsoever. The Majority disregards the fact that C.D. never agreed to be examined by Dr. Badgio for the purposes of the Bureau's disciplinary proceeding against Dr. M.

Moreover, unlike the appellant-mothers in either *Adoption of Embick,* 351 Pa.Super. 491, 506 A.2d 455 (1986), *petition for allowance of appeal denied,* 513 Pa. 634, 520 A.2d 1385 (1987), or *In the Interest of Bender,* 366 Pa.Super. 450, 531 A.2d 504 (1987), two cases heavily relied by the Majority for the proposition that C.D. has no expectation of privacy at all in any proceeding because of his alleged agreement to be examined for the limited purposes of the federal civil action, C.D. is not a party to the disciplinary proceeding in the case at bar, and the state agency prosecuting Dr. M has not requested that C.D. be examined by Dr. Badgio for any reason. Consequently, I disagree with the Majority that C.D.'s agreement to be examined for the limited purposes of the federal civil action should permit Dr. M to compel Dr. Badgio to testify in the disciplinary proceeding before the Board as to the results of such an examination absent a showing that such information is relevant and necessary as required by Section 9(c) of the Medical Malpractice Act of 1985, regardless of whether a "client" or "patient" relationship existed between Dr. Badgio and C.D.

---

**1.** Act of December 20, 1985, P.L. 457, 63 P.S. § 422.9.

In summary, I believe that the parties could agree to a limited waiver of confidentiality and that C.D. had a reasonable expectation that Dr. Badgio's testimony regarding his evaluation of him would not be presented outside the federal civil action. Moreover, even assuming no psychotherapist-patient relationship existed between C.D. and Dr. Badgio, rather than reversing the Board's order granting C.D.'s protective order, I would, pursuant to Section 9(c) of the Medical Malpractice Act of 1985, vacate said order and remand this matter to the Board for a determination as to whether Dr. Badgio's testimony is in fact relevant and reasonably necessary in the disciplinary proceeding.[2] If the Board determines that such information is not relevant or necessary for the purposes of the investigation, C.D. should be entitled a protective order.

---

2. The parties appear to dispute whether Dr. Badgio's testimony regarding C.D.'s mental state is relevant for purposes of the disciplinary proceeding. At the hearing, the Bureau presented, *inter alia*, the testimony of Robert M. Wettstein, M.D., a psychiatrist who specializes in psychiatric and medical ethics and psychiatric/legal issues. Dr. Wettstein testified, within a reasonable degree of medical certainty, that the duty and responsibility for maintaining professional boundaries and ethics in psychotherapeutic settings is always on the treatment provider no matter how mentally unstable the patient is or what the patient would like to do. (N.T. 119–120; R.R. 58a–59a). Dr. Wettstein further testified that he was familiar with Dr. M's treatment of C.D., i.e., undressing and permitting C.D. to perform rectal and genital examinations on him, and that such treatment was objectively unprofessional. (N.T. 121–123; R.R. 60a–62a). In response, Dr. M presented the testimony of three psychotherapists, Harvey Schwartz, M.D., Bradley M. Sevin, M.D., and Homer C. Curtis, M.D., who testified that Dr. M's treatment of C.D. was appropriate under the circumstances. (N.T. 333–334, 341–346, 351, 406, 452–454, 459–459; R.R. 87a–96a, 104a, 116a–118a, 120a–123a). Given its expertise, I believe that the Board would be in the best position to determine whether Dr. Badgio's testimony is relevant.