**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**G.P., Appellant.**

Superior Court of Pennsylvania.

Submitted June 26, 2000.
Filed Dec. 19, 2000.

Michael J. Savona, Charleroi, David S. Shrager, Pittsburgh, for appellant.

John C. Pettit, Asst. Dist. Atty., Washington, for Com., appellee.

Before JOYCE, TODD and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 G.P.[1] appeals from his June 29, 1999 judgment of sentence of eleven (11) to twenty-two (22) years' imprisonment. Following a jury trial, appellant was found guilty of rape,[2] statutory sexual assault,[3] criminal attempt to commit involuntary deviate sexual intercourse,[4] indecent assault,[5] aggravated assault,[6] and endangering the welfare of a child.[7]

¶ 2 These convictions arose out of a pattern of physical and sexual abuse perpetrated by appellant upon his stepdaughter, B.C., from 1989 through May 1995. The evidence further indicates the victim was four (4) years old when appellant began the physical abuse and nine (9) when he began the sexual abuse.

¶ 3 Appellant raises the following challenges to his judgment of sentence.

1.  Whether the trial court erred in admitting the privileged testimony of a Court appointed psychologist, Dr. Scott Carlson, as an admission by [appellant]?

2.  Whether the trial court erred in refusing to exclude jurors who demonstrated bias or prejudice against [appellant] during voir dire?

3.  Whether the evidence presented by the Commonwealth was insufficient

---

1.  Due to the fact that appellant is a relative of the minor/victim in this case, we have identified appellant by only his initials.

2.  18 Pa.C.S.A. § 3121.

3.  *Id.*, § 3122.1.

4.  *Id.*, § 3123(a)(1).

5.  *Id.*, § 3126(a).

6.  *Id.*, § 2702(a)(1),(4).

7.  *Id.*, § 4304.

to find [appellant] guilty beyond a reasonable doubt?

(Appellant's brief at 2).

■ ¶ 4 We begin by addressing appellant's argument the trial court erred in admitting the testimony of the court-appointed psychologist, Dr. Scott Carlson, as an admission against him. Specifically, appellant contends his statement to Dr. Carlson regarding what he perceived to be the victim's sexual aggressiveness towards him, should have been excluded based on the recognized privilege of communications made in the context of a psychotherapist-patient relation.

¶ 5 This case falls on the cusp of an extremely sharp line of demarcation between admissible and non-admissible testimonial evidence of a psychologist/psychiatrist and a client or examinee. We emphasize that there are differing standards to be applied in proceedings in criminal court and those in a civil proceeding when it relates to a court-directed examination and the results obtained therefrom.

¶ 6 The recent Commonwealth Court case of *M. v. State Board of Medicine,* 725 A.2d 1266 (Pa.Cmwlth.1999), involved a proceeding before the State Board of Medicine (Board), in which a protective Order was issued to prevent a doctor (Ph.D.psychology) from testifying before the Board as to his evaluation of the patient. The evaluation had been performed for use in an earlier federal civil action and the protective Order was issued by the Board based on the psychotherapist-patient privilege between the patient and psychologist.

¶ 7 In the federal civil litigation, the patient, through discovery and other consensual proceedings, permitted the contested statements to be admitted into evidence. At the ancillary and separate board licensing review, the *examining* psychologist refused to testify without the patient's consent or a court Order for fear of endangering his own professional licenses. The patient filed an application for an

Order requesting the court deny admission of the report by the psychologist which was granted and certified to Commonwealth Court as to whether a psychotherapist-patient relationship existed between the two. The Commonwealth Court reversed the protective Order holding that a "consented-to" court-directed examination did not establish the relationship of client in the psychotherapist-patient privilege detailed in 42 Pa.C.S.A. § 5944 as follows:

**§ 5944. Confidential communications to psychiatrists or licensed psychologists**

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

(Footnote omitted.)

¶ 8 Essentially, the Commonwealth Court relied on *In Interest of Bender,* 366 Pa.Super. 450, 531 A.2d 504 (1987), *In re Adoption of Embick,* 351 Pa.Super. 491, 506 A.2d 455 (1986), *appeal denied,* 513 Pa. 634, 520 A.2d 1385 (1987), and various law review articles. The heart of these cases, derived from *In Re "B",* 482 Pa. 471, 394 A.2d 419 (1978), is that a mother, who *voluntarily* submits to an examination by a court-appointed expert, who is to evaluate her ability to provide adequate care for her child, would not be detrimentally relying on any statutorily-created privilege, and as such, the privilege would not bar the admission of such evaluation in a juvenile proceeding. *Bender, supra* at 505.

¶ 9 In *Embick,* where the material gathered as to the child was based on observations of parent-child interaction, the mother consented to a psychological evaluation

and was informed the results would be shared with others. This Court found the psychologist's testimony admissible in the involuntary termination proceeding because mother was informed of the lack of confidentiality of the results of the examination and the public policy issues in termination cases and the broad scope of review mandated by the appellate courts require the trial court to conduct a full and comprehensive hearing.

¶ 10 In this case, section 5944 was considered inapplicable. In *In Re "B", supra,* and the cases which follow, the life and/or freedom of the person examined was not at stake and the admission went only to that person's competence or capacity as it related to care and/or treatment of a child she sought to have returned to her custody in a dependency proceeding in juvenile court. As such, the prohibition against compelling an incriminating admission, with the possible result of criminal liability, was not present.

¶ 11 In each case, including *State Board of Medicine,* the benefit to the patient/client examinee was the offset to the protection offered by the privilege and the consent (waiver) and court Order insulated the psychotherapist from liability, thereby enabling him to testify. Of controlling significance is that there was no threat to the liberty or life of the examinee and any resulting self-incrimination would not impinge on due process and the exclusionary rule. None of the cases involved in the analysis leading to *State Board of Medicine* had the impact that results here, or in related criminal cases. A vast number of criminal matters preliminarily involve forensic psychiatric/psychological evaluations pursuant to court Order and there are a myriad of psychiatric/psychological evaluations performed for purposes of voluntary or involuntary commitment procedures. In cases where a psychotherapist formulates evaluations of a person's mental state based upon observations and objective behavior, whether with or without court orders or consent by the patient, the

testimony *as to those observations* is admissible. This is the vast number of cases wherein evaluations are made pursuant to court Orders and determinations are made by the mental health expert as to an offender's capacity to aid in his own defense at trial. To cross over the line and to go beyond behavioral manifestations, in such circumstances where criminal sanctions attach based on testimonial admissions from the examinee borders on coercive custodial interrogation. At a minimum, it requires the defendant be informed of his right to consult with counsel and be advised that any admissions made can be used as evidence against him and can lead to conviction of crimes. This is specifically addressed in the Mental Health Act, 50 P.S. § 7401, **Examination and treatment of a person charged with crime or serving sentence,** and section 7402, **Incompetence to proceed on criminal charges and lack of criminal responsibility as defense.** Section 7402 provides, in pertinent part:

(e) **Conduct of Examination; Report.**—When ordered by the court, an incompetency examination shall take place under the following conditions:

. . .

(3) The person shall be entitled to have counsel present with him and shall not be required to answer any questions or to perform tests unless he has moved for or agreed to the examination. Nothing said or done by such person during the examination may be used as evidence against him in any criminal proceedings on any issue other than that of his mental condition.

¶ 12 The fear that persons subject to criminal prosecution may be convicted through psychiatric evaluation is real and present and has been the basis of international denial of rights in many areas of the world. The reason for creating the doctor/patient privilege and for barring testimony by the psychiatrist/psychologist as to client admissions was to create a shield to

protect the treatment relationship and promote the necessary interchange during therapy. Absent this shield, the process becomes a vehicle for prosecution and interferes with the therapeutic relationship. It is but a small step from permitting admissions in court-directed psychotherapeutic evaluations to the nullification of the exclusionary rule, despite the consent of the accused to the evaluation, when he has not been fully apprised of the consequences of that consent. Under these circumstances, the psychotherapist becomes the agent of the state and not the comforter to the accused.

¶ 13 In *Commonwealth v. Spetzer*, 722 A.2d 702 (Pa.Super.1998), *appeal granted*, 560 Pa. 744, 747 A.2d 368 (1999), the defendant was charged with multiple forcible rapes and sexual assaults of his stepdaughter. In the criminal prosecution following proceedings before CYS, inculpatory statements Spetzer made to his wife (the child's mother) concerning the sexual assaults, were deemed admissible against him.

¶ 14 On appeal, Spetzer alleged trial counsel was ineffective for failing to object on the basis of the spousal privilege, as his wife testified extensively as to the admissions he made to her regarding the offenses. The Commonwealth responded that the spousal privilege was inapplicable in light of the statutory provision contained in the Child Protective Services Law, 23 Pa.C.S.A. §§ 6301–6385, specifically, section 6381, **Evidence in Court Proceedings**, subsection (c):

> **(c) Privileged communications.—** Except for privileged communications

between a lawyer and a client and between a minister and a penitent, a privilege of confidential' communication between husband and wife or between any professional person, including, but not limited to, physicians, psychologists, counselors, employees of hospitals, clinics, day-care centers and schools and their patients or clients, shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse.

In *Spetzer*, it was argued that this section was meant to encompass only proceedings under the Child Protective Services Law and not criminal prosecutions. This Court agreed and in its analysis, the panel unanimously determined section 6381 was in conflict with 42 Pa.C.S.A. § 5914, **Confidential communication between spouses:**

> Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

The panel further concluded the exceptions contained in 42 Pa.C.S.A. § 5913,[8] providing that spouses may be witnesses against each other in domestic relations matters and cases involving violence to the other spouse or the children in their custody did not vitiate the privilege relating to confidential communications between spouses.

8. **§ 5913. Spouses as witnesses against each other**

Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:

(1) in proceedings for desertion and maintenance;

(2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or

upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;

(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or

(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

¶ 15 There is a common thread among the various privileges and their application pursuant to the provisions of **Depositions and Witnesses,** 42 Pa.C.S.A. § 5901–5979. Pursuant to section 5941, **Persons who may be compelled to testify,** any competent witness may be compelled to testify but this does not extend to compelling self-incriminating testimony from a witness. Also, as stated above, certain statutory and common law privileges do not apply for specific limited purposes such as actions between spouses, or under the Child Protective Services Act pursuant to section 6381. None of these exceptions abrogate the constitutional or common law protections against self-incrimination, confidential spousal communication, attorney/client or confidential clergyman communication, without consent of the party.

¶ 16 In this case, appellant was required to be evaluated by a psychologist in connection with a CYS hearing at which he divulged his relationship to the victim in a self-incriminating manner, thus creating the possibility of criminal prosecution. Unquestionably, his admissions were available to the court in the CYS proceeding pursuant to section 6381. This process was clearly delineated in *Commonwealth v. Arnold,* 356 Pa.Super. 343, 514 A.2d 890 (1986), which interpreted the identical predecessor to section 6381, 11 P.S. 2222, **Hearings and Evidence,** (2). In *Arnold,* the appellant made various inculpatory statements to a CYS social worker, which pertained to his sexual contact with a minor child living with him and the child's mother. Pursuant to a report to the police, the appellant was placed in custody and *after being given his Miranda warnings, appellant made inculpatory statements to the police.* Thereafter, this Court found no constitutional violation occurred with respect to appellant's statements to the social worker or the police. While the statutes provide certain degrees of immunity, they do not preclude reporting crimes against children, and once investigated and properly introduced into evidence in a criminal proceeding, pursuant to common law, statutory and constitutional safeguards, admissions by the offender may be used against him. Thus, pursuant to section 6381 (previously 11 P.S. § 2222), the admissions properly were presented in Juvenile Court and in accordance with the exclusionary rule, upon receipt of his *Miranda* warnings, the defendant's admissions to the police officer were legally admissible in criminal court.

¶ 17 The case before us does not fall into the category of a case where a defendant's inculpatory statements are admissible in a criminal proceeding. Appellant's admissions, pursuant to exceptions provided by the Child Protective Services Act, without his voluntary and knowing waiver of his rights against self-incrimination and benefit of counsel, should not have been used against him in a criminal proceeding.

■ ¶ 18 As in *Spetzer,* the statutory suspension of the privileged communication between therapists and party or between spouses in a protective services case does not carry over to criminal proceedings where the full common law and constitutional protections remain intact, unless specifically waived—with appellant's knowledge of the implications. It is evident that in *Bender* and *Embick,* the therapists informed the client that other persons would review their analysis and there would be no confidential relationship in the context of the CYS proceeding. Here, the true issue is not whether appellant was a client to the psychotherapist, and is thereby entitled to the protection of that relationship pursuant to section 5944, or the suspension of his right to have the protection of that status pursuant to section 6381. Rather, the issue is whether in either case his admissions during a court-ordered evaluation can be converted into a waiver of his right against self-incrimination as protected by the constitution, common law and statute as enunciated in 42 Pa.C.S.A. § 5941, **Persons who may be compelled to testify.** Appellant could not have been compelled to make incrimina-

ting statements in the trial of the child protective service case and the judge in that case would have been required to advise him of his right against self-incrimination upon his objection or that of counsel. *See* section 5941, *supra.* The statements to the psychotherapist, pursuant to the court's direction that appellant be evaluated, are entitled to the same protection.

¶ 19 Although represented by counsel, the record reveals that at the time the statements were made appellant did not have counsel present to advise him of his constitutional rights. Despite the fact the statements could have been used in the CYS procedure, there is no basis for finding appellant, with respect to these admissions, knowingly, voluntarily and intelligently waived his right against self-incrimination for purposes of the criminal proceeding. The purpose of the statutes, to promote and encourage communication and treatment in child protective service cases (*see Arnold, supra*), is fulfilled by permitting testimony of admissions pursuant to section 6381. The acts do not encompass nor were they intended to vitiate the safeguards to a defendant under the privilege of confidential communication between spouses, and the right against self-incrimination. *Spetzer* protected the right of confidential communications between husband and wife and the principle it espouses also protects the right under the exclusionary rule against incriminating statements without advice of counsel or waiver following the full presentation to a defendant of the *Miranda* warnings. Based upon the foregoing, we must agree with appellant that under the specific facts of this case, the inculpatory statements he made to Dr. Carlson were inadmissible.

¶ 20 Next, appellant contends the trial court erred in refusing to exclude a juror who apparently expressed empathy toward sexual assault victims during *voir dire*. As a new trial is necessary due to our decision regarding the admissibility of the court appointed psychologist's testimony, we need not address this issue.

¶ 21 Lastly, appellant argues the evidence was insufficient to convict him of simple and aggravated assault, as the time of the offenses was not adequately established. We begin by noting " 'the Commonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child.' " *Commonwealth v. Luktisch,* 451 Pa.Super. 500, 680 A.2d 877, 880 (1996), *quoting Commonwealth v. Groff,* 378 Pa.Super. 353, 548 A.2d 1237, 1242 (1988).

It is true that the date of the commission of the offense must be fixed with reasonable certainty. Nevertheless, this rule has been somewhat relaxed when the victim is a child. In *Commonwealth v. Groff*, this Court stated that when a young child is a victim of crime, it is often impossible to ascertain the exact date when the crime occurred. **He or she may only have a vague sense of the days of the week, the months of the year, and the year itself.** If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated.

*Id.* (Internal quotations and citations omitted; emphasis added).

¶ 22 The victim testified the abuse began when she was four (4) years old and escalated as she got older. N.T., 4/26–27/99, at 161. Moreover, the child explained that she was beat with a board or slapped several times a week. *Id.* at 162. The child specifically recalled an instance when she left a dog chain out in the yard, which was run over by a lawn mower, and for which she was beaten with a board. *Id.* at 165. The victim also recalled an instance, which occurred at a time after her mother had moved out of the house, in which appellant shocked her with a stun gun on her leg because she had let a pet bird out of its cage. *Id.* at 166.

¶ 23 In both *Luktisch, supra,* and *Groff, supra,* the victims were young children unable to provide authorities with the specific dates of the assaults. The courts, nevertheless, determined that the information provided had led to the establishment of a sufficient time frame for the offenses. In the present case, we too find the information provided was reasonably certain and allowed appellant the necessary information upon which to develop a defense. Accordingly, the absence of specific dates in this case has not deprived appellant of his due process rights.

¶ 24 Judgment of sentence vacated; case remanded for a new trial.[9]

¶ 25 Jurisdiction relinquished.

¶ 26 Dissenting Opinion by Todd, J.

TODD, J., dissenting:

¶ 1 While the Majority acknowledges that in the present case, "the true issue is not whether appellant was a client to the psychotherapist, and is thereby entitled to the protection of that relationship...." (Majority Opinion, at 368), it does not set forth a clear ruling on that issue. I would hold, as did the trial court, that the statements made by Appellant to Dr. Carlson were not privileged because there never was a true psychologist-client relationship between the two. Having determined that the privilege is not applicable, I believe that the proper inquiry is whether the confession was voluntary. Accordingly, I must respectfully dissent.

¶ 2 On the issue of the applicability of the psychologist-client privilege, the courts of this Commonwealth repeatedly have held that the existence of a true psychologist-patient relationship is essential for the privilege to apply. *See In Interest of Bender,* 366 Pa.Super. 450, 531 A.2d 504,

505 (1987); *In re Adoption of Embick,* 351 Pa.Super. 491, 506 A.2d 455, 460 (1986). *See also M. v. State Board of Medicine,* 725 A.2d 1266, 1268–69 (Pa.Commw.1999) ("A court-ordered examination does not invoke the privilege because treatment is not contemplated in conducting the examination."). Indeed, as the trial court points out, in the present case: "[G.P.] was only seen by Dr. Carlson in order to receive a court ordered evaluation. [G.P.] never received any treatment, counseling or advice of any kind from Dr. Carlson. Dr. Carlson merely evaluated [G.P.'s] mental health, he did not treat him in any way." (Trial Court Opinion, 11/1/99, at 10.) Thus, in this case, I believe that the trial court properly determined that the privilege did not apply.

¶ 3 Our inquiry cannot end here, however, as the Majority correctly notes, because, even if not privileged, these inculpatory statements were obtained by Dr. Carlson when acting under court order, albeit not in a criminal proceeding. The inquiry remains, therefore, whether their admission in the later criminal proceeding against Appellant violated his Fifth Amendment right against compelled self-incrimination. U.S. Const. amd. V.[10]

¶ 4 The United States Supreme Court held in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), that: "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468, 101 S.Ct. 1866. In *Estelle,* the Court noted that:

"Volunteered statements ... are not barred by the Fifth Amendment," but under Miranda v. Arizona, [384 U.S. 436,

9. Appellant's October 5, 2000 Petition for Remission of the Records and Remand to the lower court is denied as moot.

10. The equivalent provision of the Pennsylvania Constitution, Article 1, Section 9, "tracks the Fifth Amendment in the context of the self-incrimination clause," *Commonwealth v. Sartin,* 561 Pa. 522, 526, 751 A.2d 1140, 1142 n. 5 (2000).

86 S.Ct. 1602 (1966)], we must conclude that, when faced while in custody with a court-ordered psychiatric inquiry, respondent's statements to [the psychiatrist] were not 'given freely and voluntarily without any compelling influences' and, as such, could be used as the State did at the penalty phase only if respondent had been apprised of his rights and had knowingly decided to waive them. *Id.* at 469, 101 S.Ct. 1866.

¶ 5 By contrast, in the present case, the examination was not ordered as part of the criminal investigation against G.P. and he was not in custody when the statement was given. Thus, *Estelle* does not compel the exclusion of the confession in this case. Moreover, the Court further noted in *Estelle*, that its holding was to be interpreted narrowly, stating that "we do not hold that the same Fifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination." *Id.* at 469, 101 S.Ct. 1866.[11]

¶ 6 I find the Supreme Court of Pennsylvania's decision in *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879 (1998), to be analogous to the present case and to reflect the proper analysis once there has been a determination that the statements are not privileged. In *Nester*, the Court held that the trial court had erred in suppressing a confession obtained by a children and youth services caseworker who was investigating a claim that the defendant had sexually abused a child. *Id.*

¶ 7 Initially, the Court noted in *Nester* that *Miranda* warnings are not required

when, as in the present case, the defendant was not in custody at the time that the incriminating statement was obtained.[12] *Id.* at 163, 709 A.2d at 882. Thus, the confession was not inadmissible merely because it had been given without the defendant having been apprised of his *Miranda* rights.

¶ 8 Instead, the court stated that in determining the admissibility of a confession, "the touchstone inquiry is whether the confession was voluntary." *Id.* at 162–63, 709 A.2d at 882 (citations omitted). The Court explained in *Nester* that:

> Although Nester was not in custody, a government caseworker who had a duty to report her findings to law enforcement personnel questioned him. Therefore, we must still examine the totality of the circumstances surrounding the interrogation to determine if his confession was voluntary because a noncustodial interrogation "might possibly in some situations, by virtue of some special circumstances," result in an involuntary confession.

*Id.* at 163–64, 709 A.2d at 882 (citations omitted).

¶ 9 The Court, noting that "[v]oluntariness is determined from the totality of the circumstances surrounding the confession", *id.* at 163, 709 A.2d at 882, then analyzed the following factors to determine whether the confession had been voluntary: "the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other

---

11. The Court further held in *Estelle* that a criminal defendant's Sixth Amendment right to Counsel had been implicated in that case as well because the examination occurred after the defendant had been charged, at a "critical stage" of the proceedings, and after counsel had been appointed to represent him. *Id.* at 470, 101 S.Ct. 1866. In the present case, Appellant's Sixth Amendment right to counsel had not been triggered by the time of the examination because he had not yet been charged.

12. Because Appellant in the present case was not in police custody when interviewed by the psychologist, no right to counsel under the Fifth Amendment applies. *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) ("The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations.") (citations omitted).

factors that could drain a person's ability to withstand suggestion and coercion." *Id.* at 164, 709 A.2d at 882. Based on these factors, the Court concluded that Nester's confession had been voluntary.

¶ 10 In the present case, the trial court did not analyze whether the confession was voluntary and the record contains insufficient information for this Court to make its own analysis.[13] Thus, I would remand to the trial court for a determination of whether G.P.'s confession was voluntary. If the confession was voluntary, G.P.'s judgment of sentence should be affirmed. On this basis, I respectfully dissent.

---

**13.** The issue of "[w]hether a confession is voluntary is a conclusion of law...." *Id.* at 160, 709 A.2d at 881.