J-S49016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.C., MOTHER | No. 671 MDA 2015 |

Appeal from the Order and Decree entered April 8, 2015,
in the Court of Common Pleas of Dauphin County,
Orphans' Court, at No(s): 32 AD 2014, CP-22-DP-44-2013

BEFORE:   BENDER, P.J.E., ALLEN, and OLSON, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 14, 2015**

C.C. ("Mother") appeals from the order and decree which involuntarily terminated her parental rights to her minor daughter, A.B. ("Child"), born in December of 2012.  The order and decree also changed Child's permanency goal to adoption.[1]  We affirm.

On February 13, 2013, Mother brought Child to Penn State Hershey Children's Hospital, seeking treatment for Child's injured leg.  Once there, it was discovered that Child had a fractured femur, thirteen fractured ribs, a fractured clavicle, a fractured metatarsal, and several possible metaphyseal fractures.  Mother was unable to produce a satisfactory explanation for any of the injuries.

On February 14, 2013, Mother was charged with aggravated assault and endangering the welfare of a child.  Mother was "indicated" for child

---

[1] The parental rights of Child's father, B.B. ("Father"), were terminated by a separate order and decree entered that same day.  Father is not a party to the instant appeal.

abuse in April of 2013, and a no-contact order between Mother and Child was entered. Child was adjudicated dependent by order dated May 15, 2013, and aggravated circumstances were found as to Mother. Meanwhile, a safety plan was put into place, with Child residing in the home of Father's grandmother. Child was subsequently placed in foster care after members of the grandmother's household admitted to drug use.

On May 2, 2014, Dauphin County Social Services for Children and Youth ("the Agency") filed a petition to terminate Mother's parental rights involuntarily, and to change Child's permanency goal to adoption. A hearing was held on April 1, 2015, and April 6, 2015. On April 8, 2015, the orphans' court entered its order and decree terminating Mother's parental rights and changing Child's permanency goal. Mother timely filed a notice of appeal on April 16, 2015, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother now raises the following issue for our review: "Whether the [orphans'] court abused its discr[e]tion when it determined to change the goal from reunification to adoption and involuntarily terminated Mother's parental rights?" Mother's Brief at 9 (unnecessary capitalization omitted).[2, 3]

---

[2] While Mother purports to challenge the change of Child's permanency goal to adoption, her brief does not contain any citation to, or discussion of, the relevant provisions of the Juvenile Act. Accordingly, we conclude that Mother has failed to preserve any challenge to the orphans' court's change of goal order, and we focus our analysis on the termination of Mother's parental rights. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884,

We consider Mother's claim mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

---

897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

[3] The Agency argues, *inter alia*, that Mother has waived "the issues presented in the statement of matters complained of on appeal," because these issues were not included in Mother's statement of questions involved, and because Mother failed to discuss those issues in her appellate brief. Agency's Brief at 19-21. To the extent the Agency is attempting to argue that Mother has waived her challenge to the decree terminating her parental rights, we disagree. Mother challenged the termination of her parental rights both in her concise statement, and in her statement of questions involved. Mother also challenges the termination of her parental rights in the argument section of her appellate brief. We conclude that Mother has properly preserved this claim.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the Agency filed its petition to terminate Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b), which provide:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement

with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863

A.2d 1141 (Pa. 2004). Here, we analyze the termination of Mother's parental rights under Sections 2511(a)(8) and (b).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). "Notably, termination under Section 2511(a)(8) does not require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted).

Instantly, the orphans' court explained its decision to terminate Mother's parental rights by emphasizing the abuse suffered by Child, and the fact that Mother did not take responsibility for Child's injuries. Orphans' Court Opinion, 5/14/15, at 11-12. Mother argues that she should not have been required to take responsibility for Child's injuries, because such requirement violates her right against self-incrimination. Mother's Brief at 17-18.

After a thorough review of the record, we conclude that the orphans' court did not abuse its discretion. During the termination and goal change hearing, Dr. Kathryn Crowell, a pediatrician, testified that she examined Child at Penn State Hershey Children's Hospital, and discovered Child's

numerous injuries, listed *supra*. N.T., 4/1/15, at 7-9. A follow-up examination was conducted two weeks later to look for injuries that may not have been apparent during the initial examination. *Id.* at 11-12. This second examination revealed additional injuries, including a possible left clavicle fracture, and other possible metaphyseal fractures. *Id.* at 12-13.

Dr. Crowell further testified that she spoke to Mother, who suggested that Child's injuries may have been suffered when Child rolled off a couch. *Id.* at 14-15. However, Dr. Crowell opined, to a reasonable degree of medical certainty, that Child's injuries were not caused by rolling off a couch. *Id.* at 15. Dr. Crowell explained that Child's injuries were in various stages of healing, and could not all have occurred at the same time. *Id.* at 13-14. In addition, various different types of force would have been necessary to cause the injuries. *Id.* at 16-18. Ultimately, Dr. Crowell concluded that Child was the victim of physical abuse. *Id.* at 24.

Pennsylvania State Trooper, Kyle Tobin, testified that he investigated the physical abuse suffered by Child. *Id.* at 30. As part of this investigation, Trooper Tobin interviewed both Mother and Father. *Id.* at 34. During her initial interview, Mother again suggested that Child may have broken her leg by rolling off of a couch. *Id.* at 33. During a later interview, Mother stated that Child's leg must have been broken by Father, while he was changing her diaper. *Id.* at 36. Mother also indicated that she had

been "squeezing the baby to help get air bubbles out of her," and that this may have caused Child's fractured ribs. *Id.* at 38.

According to Trooper Tobin, Father claimed that Child's ribs likely were broken when he "rolled over on her in bed the one time . . . ." *Id.* at 38. Father admitted to breaking Child's leg, but stated that this occurred accidently. *Id.* at 39. Father "described that when he was changing the baby's diaper, she was fussy and kind of rolling around, and he had grabbed her by the leg and pulled her across . . . . [w]hatever surface he had her on to change her diaper . . . ." *Id.* Father also described an incident during which Mother "toss[ed Child] on the bed." *Id.* at 45. Father stated that Mother is "a very violent person." *Id.*

Agency caseworker, Erica Dressler, testified that a service plan was created for Mother, which required, *inter alia*, that Mother "acknowledge responsibility for her role in [Child's] injuries[.]" *Id.* at 56. However, Mother never discussed Child's injuries with Ms. Dressler. *Id.* at 64, 70. Ms. Dressler explained that, "[a]t the very first permanency review, the judge had kind of advised that they don't need to talk about these things so they wouldn't incriminate themselves. And that was kind of the whole stance throughout my involvement, that we weren't going to talk about it." *Id.* at 60-61. Ms. Dressler further explained that the Agency filed a petition to terminate Mother's parental rights because "[t]he issues which brought [Child] into care have not been resolved in any way, shape, or form. We

weren't able to discern what had happened to [Child]." ***Id.*** at 64. Ms.
Dressler stated that while Mother and Father "may have talked with the
police officer, [] they had never sat down and talked with me about exactly
what happened. So we couldn't put anything into place to prevent it from
happening again." ***Id.***

Accordingly, the record confirms that Child suffered severe physical
abuse at the hands of Mother and/or Father. Mother has never admitted to
abusing Child, nor has she provided any reasonable explanation for Child's
injuries. Mother's refusal to acknowledge responsibility for the harm
suffered by Child has prevented the Agency from addressing the causes of
this harm, and from ensuring Child's safety while in Mother's care. Thus,
Mother has failed to remedy the conditions which led to Child's removal. In
addition, because Mother continues to pose a grave safety risk to Child, it is
clear that terminating Mother's parental rights would serve Child's needs and
welfare.[4]

---

[4] While Mother contends that the orphans' court was not permitted to
consider her refusal to admit to child abuse, she fails to cite any authority
which supports this proposition. In her brief, Mother relies entirely on
***Commonwealth v. G.P.***, 765 A.2d 363 (Pa. Super. 2000). In that case,
G.P. was charged with various crimes relating to the sexual abuse of his
stepdaughter. ***Id.*** at 364. As part of a related child protective services
case, G.P. made statements to a court-appointed psychologist "regarding
what he perceived to be the victim's sexual aggressiveness towards him."
***Id.*** at 365. The psychologist then testified to these statements during G.P.'s
criminal trial. ***Id.*** On appeal, a panel of this Court concluded, *inter alia*,
that G.P.'s statements should not have been admitted, as G.P. did not
engage in a "voluntary and knowing waiver of his rights against self-
incrimination and benefit of counsel . . . ." ***Id.*** at 368. The Court observed,

- 9 -

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights under Section 2511(b). We have discussed our analysis under Section 2511(b) as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010) (some citations omitted).

Here, the orphans' court found that terminating Mother's parental rights would serve Child's needs and welfare. Orphans' Court Opinion, 5/14/15, at 12-13. The court observed that Child is doing well in her pre-adoptive foster home. **Id.** at 12.

Mother is not entitled to relief. Ms. Dressler testified that Child has been residing in a pre-adoptive foster home since June of 2013. N.T., 4/1/15, at 71. Child is "very healthy," and is developmentally on target. **Id.** at 76. Further, Child has a "very positive" relationship with her foster

---

however, that G.P.'s statements were, "[u]nquestionably, . . . available to the court in the CYS proceeding . . . ." **Id.** at 368. **G.P.** is readily distinguishable from the case *sub judice*, and we do not find its reasoning to be relevant or persuasive.

parents. *Id.* at 73. Ms. Dressler explained, "I know [Child] can't verbalize it, but, . . . it's clear that she cares for them and goes to them for comfort." *Id.* at 73. Ms. Dressler noted that Child's foster parents are willing to allow ongoing contact between Child and Mother. *Id.* at 74.

Thus, the record supports the finding of the orphans' court that terminating Mother's parental rights will serve Child's needs and welfare. Child is thriving in her pre-adoptive foster home, and is bonded with her foster parents. In contrast, there is no evidence of any bond between Child and Mother, and Mother poses a serious safety risk to Child.

Because we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights to Child involuntarily, and by changing Child's permanency goal to adoption, we affirm the order and decree of the orphans' court.

Order and decree affirmed.

P.J.E. Bender joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2015

- 11 -