J-S23032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
    :   PENNSYLVANIA

v.   :

CHAD AARON RENNINGER   :

    Appellant   :   No. 1357 WDA 2018

Appeal from the Judgment of Sentence Entered June 6, 2018
In the Court of Common Pleas of Clarion County Criminal Division at
No(s): CP-16-CR-0000171-2017

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:         **FILED MAY 16, 2019**

Appellant, Chad Aaron Renninger, appeals from the aggregate judgment of sentence of 157 to 314 months of confinement imposed following his convictions for multiple sexual offense against three separate children. Specifically, a jury convicted Appellant of: two counts of corruption of minors, with defendant "being of the age of 18 years and upwards"; 17 counts of indecent assault where "the complainant is less than 13 years of age"; 17 counts of indecent assault where "the complainant is less than 16 years of age"; and five counts of criminal attempt to commit invasion of privacy.[1] We affirm.

---

[1] 18 Pa.C.S. §§ 6301(a)(1)(ii), 3126(a)(7), 3126(a)(8), and 901(a), respectively.

\*   Retired Senior Judge assigned to the Superior Court.

Appellant was born in 1984.  N.T., 3/26/2018, at 113 (stipulation as to Appellant's birthday).

His first victim, **K.G.**, was born in 2002.  *Id.* at 18-20, 28-35.  From 2007 to 2013, when K.G. was between the ages of five and eleven years old, Appellant would "take [K.G.'s] clothes off and then touch [her] inappropriately."

Appellant's second victim, **T.M.**, was born in 2001.  *Id.* at 62-67, 73. From 2009 to 2012, when T.M. was between the ages of eight and eleven years old, Appellant had sexual contact "more than ten" times with T.M.

Appellant's third victim, **A.M.**, was born in 2001.  *Id.* at 85-88.  In 2015, when A.M. was fourteen years old, Appellant attempted to record her with his tablet at least five times while she was in the shower.

Pennsylvania State Police Trooper Rodney J. Hotchkiss first interviewed K.G. on July 18, 2016, and executed a search warrant for Appellant's electronic devices later that same day.  *Id.* at 71, 100-02, 105.  Trooper Hotchkiss first interviewed T.M. on August 17, 2016.

In January 2017, T.M. gave a written statement to police.  *Id.* at 74.  In "January or February" 2017, K.G. did the same.  *Id.* at 43.  Charges were filed against Appellant on February 13, 2017.   Police Criminal Complaint, 2/13/2017.  Nothing in the record indicates that the jury was ever provided with a copy of the police criminal complaint or told the exact date that charges were filed.

Appellant's jury trial commenced on March 26, 2018. The Commonwealth moved for sequestration of witnesses, and Appellant concurred. N.T., 3/26/2018, at 13-14. Both the Commonwealth and Appellant stated that their witnesses were sequestered, and the trial court instructed the jury on the meaning of sequestration.

"At trial, K.G. testified on direct examination about several incidents and then she read from [the] written statement she had prepared when she met with Trooper Hotchkiss after she told her mother what [Appellant] did to her. The statement was admitted in evidence as Commonwealth's Exhibit A." Trial Court Opinion, filed November 8, 2018, at 1 (citing N.T., 3/26/2018, at 24-36). She acknowledged giving the written statement to police in "January or February" of 2017. N.T., 3/26/2018, at 43.

K.G. "described in detail eight separate incidents that occurred between 2008 and 2013[,]" when Appellant sexually assaulted her. Trial Court Opinion, filed November 8, 2018, at 1. During cross-examination, when defense counsel suggested that K.G.'s description of eight incidents contradicted her statement that the assaults occurred four or five times per week for years, K.G. clarified: "I am not saying it happened only eight or ten times. I am saying that is what I can visually remember. . . . I am not saying that is the only times that it happened." N.T., 3/26/2018, at 55.

K.G. also testified that she "believe[d]" that the assaults ceased to occur when Appellant married and was "pretty sure that [Appellant] got married in

- 3 -

2013[,]" but she did not know when Appellant and his wife began to live together before marriage. *Id.* 40-41, 60. When asked if it were "possible that some of these dates [of the assaults] could have occurred while [Appellant] was married[,]" K.G. answered affirmatively. *Id.* at 60.

During trial, T.M. gave the following testimony:

A.     [Appellant] would take me into the bathroom, like, pull my pants down and my underwear and pull my shirt up, and he would bend over and take his down and pull his shirt up and make me hump him.

Q.     What does that mean? If someone doesn't know what it means to say that you humped somebody, what does that mean?

A.     Like you inject into him.

Q.     You said inject into him?

A.     Yeah.

Q.     What would you inject into him?

A.     My penis.

*Id.* at 64. T.M. acknowledged that his first interview with Trooper Hotchkiss was on August 17, 2016, and that he gave a written statement to police in January 2017. *Id.* at 71, 74. When cross-examining T.M. about his written statement, defense counsel repeatedly remarked that T.M. wrote his statement "months later" or "[m]onths after [T.M.] originally met with the trooper," which T.M. always agreed was true. *Id.* at 74.

A.M. testified that Appellant had attempted to record her in the shower at his home "[t]hree or four" times and in the shower in a camper at a campground "once or twice." *Id.* at 88, 90.

- 4 -

Trooper Hotchkiss testified that he first interviewed K.G. on July 18, 2016, and that he executed a search warrant for Appellant's electronic devices later that day. *Id.* at 100-01. On cross-examination, the trooper admitted that, when he initially interviewed T.M. in August 2016, T.M. never mentioned inserting his penis into Appellant. *Id.* at 104. Trooper Hotchkiss's testimony continued:

> Q. You interviewed [K.G.] in July of 2016. You interviewed [T.M.] in August of 2016. You executed your search warrant in July of 2016. Right?
>
> A. That is correct.
>
> Q. When did you actually file the criminal charges against [Appellant]?
>
> [THE COMMONWEALTH]: I'll object to the relevance. . . .
>
> [DEFENSE COUNSEL]: It is relevant because it shows the police weren't very worried if they waited months and months to file the charges.
>
> [THE COMMONWEALTH]: I'll object to that response to how it was relevant because he is making an argument that is also irrelevant to the jury.
>
> THE COURT: The objection is sustained; and members of the jury, you are instructed to disregard [defense counsel]'s statement on relevance, so the objection is sustained.

*Id.* at 105-06. Trooper Hotchkiss then explained that he did not meet with T.M. at all between the initial interview in August 2016 and his request for T.M.'s written statement in January 2017. *Id.* at 106.

Appellant's mother, Cindy Renninger, testified that A.M. had told her about Appellant attempting to record A.M. but, when in Appellant's presence, A.M. recanted and apologized. *Id.* at 118-19. Ms. Renninger additionally

stated that she told A.M.'s mother, C.M., that A.M. had said to her that Appellant had attempted to record A.M. in the shower. *Id.*

After Ms. Renninger's testimony and outside the presence of the jury, the Commonwealth asked the trial court for a ruling:

> It was brought to light through the last witness's testimony about a conversation between her and [C.M.] which is [A.M.]'s mother about that it had been reported previously about [Appellant] was videotaping [A.M.], and there was a whole conversation that had occurred.
>
> [C.M.] was in the courtroom. I had never intended to call her as a witness. That came to light during that testimony. I asked her briefly, and she said that never happened. She never had this conversation with Cindy. . . .
>
> So she'd want to testify potentially about that. But she was not sequestered. I never expected this to come up[.]

*Id.* at 143-44. Appellant objected, but the trial court permitted the Commonwealth to call C.M. as a rebuttal witness. *Id.* at 144-45.

> [C.M.] did testify that she did not have a conversation with Cindy Renninger about A.M. alleging that [Appellant] had tried to videotape her in the shower in 2015. . . .
>
> The defense attorney then cross examined [C.M.] about matters not covered on direct examination. She denied having a telephone conversation with Cindy Renninger . . . in July 2016. She also said her daughter never told her or anyone about the five times [Appellant] had videotaped her.

Trial Court Opinion, filed November 8, 2018, at 11 (citing N.T., 3/26/2018, at 146-48).

During closing arguments, defense counsel emphasized the delay between the first police interviews with K.G. and T.M. and follow-up investigations:

- 6 -

[K.G.'s] written statement that she wrote in January or February of 2017. She was interviewed by the police in July of 2016, and then five or six months later, writes these incidents down . . . She writes this basically what I would call a script out months after meeting with the trooper. . .

[T.M.] gives that interview, and then months later, he writes this statement that we ask him about.

N.T., 3/27/2018, at 5, 7, 13.

On March 27, 2018, the jury convicted Appellant of the aforementioned charges. For crimes against K.G., Appellant was convicted of one count of corruption of minors, eight counts of indecent assault of a person less than 13 years of age, and eight counts of indecent assault of a person less than 16 years of age. For crimes against T.M., Appellant was convicted of one count of corruption of minors, nine counts of indecent assault of a person less than 13 years of age, and nine counts of indecent assault of a person less than 16 years of age. Finally, all five convictions for criminal attempt to commit invasion of privacy were for crimes against A.M.

On June 6, 2018, the trial court sentenced Appellant. On June 18, 2018, Appellant filed a post-sentence motion for a new trial challenging the weight of the evidence pursuant to Pa.R.Crim.P. 607. On August 17, 2018,

at oral argument[, Appellant's] counsel presented two arguments in support of a request for a new trial. First, he argued that the victims testified that the incidents of abuse happened on dates that are different than the dates they gave to the police and the ones the Commonwealth stated in the Information and therefore, the victims' testimony is unreliable. Next, he argued that the testimony of the victim [T.M.] that [Appellant] made him perform anal sex on [Appellant] when [T.M.] was seven years old is unreliable because it was physiologically impossible and also

- 7 -

because [T.M.] did not tell the police, but instead reported it for the first time at trial.

Trial Court Order, 8/22/2018, at 1. On August 22, 2018, the trial court denied Appellant's post-sentence motion. *Id.* at 3. On September 18, 2018, Appellant filed this timely direct appeal.[2]

Appellant presents the following issues for our review:

1. Whether the trial court committed reversible error by limiting defense cross-examination of the arresting officer and prohibiting defense questioning as to the timing of and reason for delay in filing charges against [Appellant]?

2. Whether the trial court committed reversible error by allowing the testimony of a Commonwealth witness, who sat through the entire trial, in violation of the court's sequestration order?

3. Whether the verdict is against the weight of the evidence?

4. Whether the Commonwealth failed to prove all five counts of criminal attempt of invasion of privacy beyond a reasonable doubt?

Appellant's Brief at 8-9 (suggested answers and trial court's answers omitted).[3]

_____

[2] Appellant filed his statement of errors complained of on appeal on October 9, 2018. The trial court entered its opinion pursuant to Pa.R.A.P. 1925(a) on November 8, 2018.

[3] The Commonwealth has elected not to file a brief with this Court. Letter from Drew J. Welsh, Assistant District Attorney, to Nicholas Corsetti, Deputy Prothonotary (April 3, 2019). While this Court understands the demand placed upon county prosecutors with small staffs, this Court is shocked that, in a case of this severity, the Commonwealth did not file a brief.

**Cross-Examination of Trooper Hotchkiss**

Appellant first contends that "the trial court committed reversible error by limiting defense cross-examination of the arresting officer and prohibiting questioning as to the timing and delay in filing charges" – specifically, "the nearly half-year delay" between the interviews of K.G. and T.M. in July and August 2016 and the filing of charges against Appellant in February 2017. Appellant's Brief at 23;[4] **see also id.** at 25-26; N.T., 3/26/2018, at 100, 102, 105-06. Appellant argues that counsel should have been allowed to ask Trooper Hotchkiss about this delay "as evidence that the Commonwealth questioned complainants' stories." Appellant's Brief at 23.

"The determination of the scope and limits of cross-examination are within the discretion of the trial court, and we cannot reverse those findings absent a clear abuse of discretion or an error of law." **Commonwealth v. Handfield**, 34 A.3d 187, 210 (Pa. Super. 2011) (citations omitted).

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court explained its reasons for sustaining the Commonwealth's objection as follows:

> [B]efore [the trial court] sustained [the Commonwealth's] objection[, it] considered defense counsel's explanation that the date of filing the charges was relevant because it showed the police were not very worried if they waited months and months to

---

[4] In an accompanying footnote, Appellant states: "The issue was preserved as the trial court sustained the Commonwealth's objection to the testimony, solicited by [Appellant], over [Appellant]'s argument." Appellant's Brief at 23 n.6. Pursuant to our review of the record, we agree. N.T., 3/26/2018, at 105-06.

file the charges. In [the trial court's] opinion, evidence on whether or not the police were worried about the case **did not tend to establish a material fact or support an inference regarding a material fact** on the guilt or innocence of [Appellant]. It appeared that defense counsel was asking the jury to infer that Trooper Hotchkiss delayed filing the charges because he did not believe the victims. [The trial court] decided that a delay in the filing did not tend to prove that the trooper had doubts about the victims' credibility, but in any case, the trooper's view of the credibility of the victims at that stage of the proceedings was irrelevant. It was the job of the jury to judge the credibility of the witnesses.[5] . . . [The trial court] did not commit an error in instructing the jurors to disregard defense counsel's argument on credibility.

Trial Court Opinion, filed November 8, 2018, at 9–10 (emphasis added).

According to Pennsylvania Rule of Evidence 402: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible."

Evidence is relevant if:

(a) it has any tendency to make a fact **more or less probable** than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Pa.R.E. 401 (emphasis added). Our Supreme Court has also recently further explained: "Evidence is admissible if it is relevant — that is, if it tends to establish a material fact, **makes a fact at issue more or less probable**, or supports a reasonable inference supporting a material fact — and its probative value outweighs the likelihood of unfair prejudice." ***Commonwealth v.***

_____

[5] "The fact-finder" – in the instant action, the jury – "has the responsibility of resolving . . . questions of credibility." ***Commonwealth v. Roane***, 2019 PA Super 56, *4 (filed February 22, 2019) (citation omitted).

- 10 -

*Clemons*, 200 A.3d 441, 474 (Pa. 2019) (emphasis added) (citations omitted).

The trial court, in making its ruling on the relevance of the trooper's opinion of the victims' reliability, only considered whether Appellant's questions "tend[ed] to establish a material fact or support an inference regarding a material fact[.]" Trial Court Opinion, filed November 8, 2018, at 9. The trial court did not address whether Appellant's line of questioning "ha[d] any tendency to make a fact **more or less probable**[.]" Pa.R.E. 401(a); *see also Clemons*, 200 A.3d at 474 (evidence is relevant if it "makes a fact at issue more or less probable").

Accordingly, we agree with Appellant that the trial court abused its discretion in sustaining the Commonwealth's objection to Appellant's cross-examination of Trooper Hotchkiss about the delay between the first interviews with K.G. and T.M. and the subsequent investigation and filing of charges. *See Handfield*, 34 A.3d at 210. In a case such as this one that relies entirely upon testimonial evidence with no physical evidence, any challenge to the credibility of the testifying witnesses could make the facts about which they testified more or less probable. *See* Pa.R.E. 401(a); *Clemons*, 200 A.3d at 474.

However, such error is harmless, because the jury was already aware of the time lag between the initial reporting in July and August 2016 and the delayed police investigation in January 2017 even without this additional

cross-examination. We "may affirm on any valid basis appearing of record." *In re N.B.*, 187 A.3d 941, 945 (Pa. Super.) (*en banc*) (citation and internal quotation marks omitted), *appeal denied*, 197 A.3d 1172 (Pa. 2018).

"Not every denial of an accused's right to cross-examine . . . requires a new trial. If the error did not control the outcome of the case, it will be deemed harmless." *Commonwealth v. Mullins*, 665 A.2d 1275, 1279 (Pa. Super. 1995) (citations omitted).

In the current case, the jury knew from T.M.'s and Trooper Hotchkiss's testimony that the trooper's first interview with K.G. was in July 2016, that the search warrant was executed immediately thereafter, and that T.M. was interviewed by the trooper in August 2016. N.T., 3/26/2018, at 71, 100-01. The jury also heard of no additional activity on the case until January 2017, when, according to their own testimony, K.G. and T.M. were asked to give written statements to police. *Id.* at 43, 74. Trooper Hotchkiss specifically acknowledged that he had no interaction with T.M. between August 2016 and January 2017. *Id.* at 106. During cross-examination of T.M. and during closing arguments, defense counsel emphasized the months of inertia by police after K.G.'s and T.M.'s original interviews. *Id.* at 74; N.T., 3/27/2018, at 5, 7, 13.

Hence, even if the jury were never told the exact date that charges were filed against Appellant, the jury was still cognizant of at least a four-and-half month gap during which no police activity occurred and could have inferred a

- 12 -

plethora of reasons for this delay, including Appellant's suggestion that the Commonwealth doubted K.G.'s and T.M.'s veracity. Further cross-examination of Trooper Hotchkiss on this topic would not have added anything to the jury's awareness, and the trial court's decision to preclude additional cross-examination did not control the outcome of the case, making the trial court's error harmless. *See Mullins*, 665 A.2d at 1279.[6]

Appellant also argues that "his federal and state constitutional rights to confront witnesses against him and his rights of due process" were violated by this delay prior to his arrest. Appellant's Brief at 24. While "certain pre-arrest delay may violate a defendant's due process rights[,] . . . [o]nly if a defendant can show that the passing of time caused actual prejudice and that the prosecution lacked sufficient and proper reasons for postponing the prosecution is he entitled to relief." *Commonwealth v. Simpson*, 66 A.3d 253, 283 (Pa. 2013) (citations and internal quotation marks omitted). Since Appellant cannot establish prejudice caused by the delay, he cannot establish a violation of his due process rights and is not entitled to relief.

---

[6] Additionally, the jurors personally heard, viewed, and assessed the testimony of K.G. and T.M., as well as that of A.M. and C.M., and made their own credibility determinations. The jury did not just rely on Trooper Hotchkiss's assessment of the victims nor was this child abuse case one where the victims' evidence is presented through a forensic psychologist.

## C.M.'s Testimony

Next, Appellant argues:

The trial court committed reversible error by allowing the testimony of a witness, who was not sequestered and heard all trial testimony, in violation of the court's sequestration order.

The trial court permitted the testimony of a witness, [A.M.]'s mother, over [Appellant]'s objection, notwithstanding that [A.M.]'s mother had heard all other witnesses' testimony at trial, including that of her daughter, one of the complainants, and notwithstanding that all testifying witnesses were to be sequestered.

Appellant's Brief at 34-35 (footnote omitted) (some formatting).

"As to sequestration, the abuse of discretion standard applies[.]"

**Commonwealth v. Tighe**, 184 A.3d 560, 572 (Pa. Super.), *appeal granted on other grounds*, 195 A.3d 850 (Pa. 2018); *see also* **Commonwealth v. Rose**, 172 A.3d 1121, 1127 (Pa. Super. 2017) ("Where violation of a sequestration order occurs, the remedy selected is within the sound discretion of the trial court." (citing **Commonwealth v. Smith**, 346 A.2d 757, 760 (Pa. 1975)), *reargument denied* (December 6, 2017), *appeal denied*, 186 A.3d 369 (Pa. 2018); **Commonwealth v. Stevenson**, 894 A.2d 759, 767 (Pa. Super. 2006) ("This Court's standard of review for a trial court's decision on sequestration of witnesses is abuse of discretion.").

In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken.

**Rose**, 172 A.3d at 1127 (quoting **Smith**, 346 A.2d at 760).

After a thorough review of the record, Appellant's brief, the applicable law, and the well-reasoned analysis of the Honorable James G. Arner, we conclude Appellant's second issue merits no relief. The trial court opinion pursuant to Pa.R.A.P. 1925(a) comprehensively discusses and properly disposes of that question:

> [T]he Commonwealth [called C.M.] in rebuttal. . . . [C.M.] said no one had contacted her in 2015 about [Appellant] videotaping A.M. in the shower. That was the extent of her direct testimony.
>
> * * *
>
> [E]ven if [C.M.] had been sequestered, the Commonwealth would have been able to call her to the stand and tell her what Cindy Renninger said about the conversation and ask if it had happened. [The trial court] believed her testimony on that point would not be influenced by the testimony of others. . . .
>
> In [the trial court's] opinion, the fact that [C.M.] heard the trial testimony of Cindy Renninger did not affect her testimony on direct examination that she did not talk with Cindy Renninger about [Appellant] videotaping A.M. in the shower. The fact that [C.M.] heard her daughter's testimony did not affect her testimony because A.M. had testified she did not remember any such conversation.

Trial Court Opinion, filed November 8, 2018, at 10-11 (citing N.T., 3/26/2018, at 143-44, 146-47). Consequently, the trial court appropriately considered the seriousness of the failure to sequester C.M., the impact upon C.M. of hearing A.M.'s and Ms. Renninger's testimony, and the minimal impact of C.M.'s testimony on the outcome of the trial. *See Rose*, 172 A.3d at 1127. Ergo, the trial court had a reasonable basis for its decision to allow C.M. to testify as a rebuttal witness even though she was not sequestered during previous testimony. *See id.* Accordingly, we find no abuse of discretion by

- 15 -

the trial court, ***Tighe***, 184 A.3d at 572; ***Rose***, 172 A.3d at 1127, and we affirm Appellant's second issue on the basis of the trial court's opinion.

## Weight of the Evidence

Appellant next challenges the weight of the evidence, maintaining that it is so contrary to the verdict that he is "entitled to a new trial." Appellant's Brief at 48-49.[7] He continues: "The testimony given by the three complainants was incredible and, in varying degrees, inconsistent and irreconcilable with the complainants' own previous statements and other evidence adduced at trial." ***Id.*** at 49.

Appellant attacks each of the victims' credibility and consistency in turn. First, he states that K.G. "told Trooper Hotchkiss that the assaults occurred every week, for years, . . . four to five times a week[,]" which he contends is "utterly inconsistent with [K.G.]'s written statement and [K.G.]'s testimony at trial" that Appellant "indecently assaulted her about eight times[.]" ***Id.*** at 50 (citing Commonwealth Ex. "A"; N.T., 3/26/2018, at 28-35, 42). Additionally, he challenges: "[K.G.] also testified that the assaults did not occur when [Appellant]'s girlfriend (then wife), Theresa, lived with [Appellant]. However, Theresa lived with [Appellant] nearly all of the years alleged by [K.G.] to be when the assaults occurred. . . . In short, [K.G.]'s story doesn't add-up." ***Id.*** at 50-51 (citing N.T., 3/26/2018, at 40-41).

---

[7] Appellant preserved this challenge in his post-sentence motion for a new trial dated June 18, 2018, challenging the weight of the evidence pursuant to Pa.R.Crim.P. 607 and at the corresponding oral argument on August 18, 2018.

Appellant likewise argues that T.M.'s "testimony is utterly inconsistent and irreconcilable, in most respects, with oral and written statements given to Trooper Hotchkiss[,]" because T.M. "never mentioned inserting his penis into" Appellant "[w]hen Trooper Hotchkiss interviewed [T.M.] in August 2016." *Id.* at 51-52 (citing N.T., 3/26/2018, at 104). He continues that "the nature of the assault, i.e. involving [T.M.]'s penetration of [Appellant], is incredible, given [T.M.]'s age at the time of the alleged acts, which [T.M.] testified he 'would have been nine or ten years old.' . . . Simply put, [T.M.]'s stories just don't add-up." *Id.* at 52-53, 55 (citing N.T., 3/26/2018, at 65, 72).

Finally, Appellant urges this Court to conclude that A.M.'s "testimony as to [Appellant]'s attempt to tape [A.M.] is inconsistent with [A.M.]'s own testimony and other witness testimony including, but not limited to, that of [Appellant]'s mother, Cindy Renninger, who testified that [A.M.] made an allegation to Cindy Renninger that [Appellant] videotaped [A.M.], and later retracted the claim[.]" *Id.* at 55-56.

> When considering challenges to the weight of the evidence, we apply the following precepts. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the factfinder. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, when a trial court finds that the evidence was not against the weight of the evidence, we must give the gravest consideration to the trial court's conclusion because it is the trial court, and not the appellate court, that had the opportunity to hear and see the evidence presented. Furthermore, a defendant will only prevail on a challenge to the weight of the evidence when

- 17 -

the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Cramer***, 195 A.3d 594, 600-01 (Pa. Super. 2018) (internal citations and quotation marks omitted).

In the current appeal, Appellant is requesting that we re-weigh the evidence and "substitute our judgment for that of the trier of fact." ***Id.*** at 600. "Resolving" the victims' "contradictory testimony" is a "matter[]" for the jury as "the factfinder[,]" not for this Court. ***Id.*** All credibility determinations are also the prerogative of the jury as fact-finder. ***Id.*** Thus, we cannot and will not substitute our judgment for that of the jury. ***Id.***

However, even assuming we could substitute our judgment for that of the fact-finder, we would still find minimal inconsistencies in the victims' testimonies, and those few that do exist do not "shock[] the conscience of the court." ***Id.*** at 601.

Appellant misconstrues K.G.'s testimony, as she never stated that Appellant only assaulted her eight or ten times but, instead, testified that "was what she could visually remember[,]" in order to describe the incidents in detail to police and to the jury. ***Compare*** Appellant's Brief at 50 (citing Commonwealth Ex. "A"; N.T., 3/26/2018, at 28-35) ***with*** N.T., 3/26/2018, at 55.

As for Appellant's contention that K.G.'s statement that Appellant ceased to assault her once his girlfriend/wife began to live with him, this Court has observed that the evidence of a child victim about the chronology of a

criminal course of conduct need not be as precise as one would expect of the testimony of an adult victim or about a single incident:

> [T]he Commonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child.
>
> It is true that the date of the commission of the offense must be fixed with reasonable certainty. Nevertheless, this rule has been somewhat relaxed when the victim is a child. . . . [W]hen a young child is a victim of crime, it is often impossible to ascertain the exact date when the crime occurred. **He or she may only have a vague sense of the days of the week, the months of the year, and the year itself.** If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated.

*Commonwealth v. G.P.*, 765 A.2d 363, 369 (Pa. Super. 2000) (emphasis in original) (citations and internal quotation marks omitted) (some formatting).

"[T]he Commonwealth must [also] be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa. Super. 2007). In the current action, the Commonwealth must similarly be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the dates of the continuous course of assaults upon K.G. *See id.*; *G.P.*, 765 A.2d at 369.

Additionally, as the trial court noted, "there is no evidence to support [Appellant's] argument that T.M. could not have 'injected' his penis because he was only nine or ten years old." Trial Court Opinion, filed November 8, 2018, at 5; *compare id. with* Appellant's Brief at 51-53 (citing N.T., 3/26/2018, at 65, 72, 104).

Lastly, the only evidence of A.M.'s alleged recantation was testimony from Appellant's own mother, which C.M. disputed. **Compare** Appellant's Brief at 55-56 **with** N.T., 3/26/2018, at 118-19 **and** Trial Court Opinion, filed November 8, 2018, at 11 (citing N.T., 3/26/2018, at 146-48). The jury, as "finder of fact[,] . . . [wa]s free to believe all, none or some of the evidence[,]" **Cramer**, 195 A.3d at 600, and thus was free to disbelieve Ms. Renninger.

Moreover, even if the jury believed Ms. Renninger that A.M. recanted, the jury could have concluded that A.M. only withdrew her claim when she was confronted by Appellant and was intimidated by his presence. N.T., 3/26/2018, at 118-19. Additionally, the jury was aware of A.M.'s alleged recantation when it rendered its verdict, distinguishing this matter from post-verdict recantation. Furthermore, A.M. never recanted under oath.

For all these reasons, we find that the verdict does not shock the conscience. **Cramer**, 195 A.3d at 601. Accordingly, Appellant's third issue merits no relief.

## Sufficiency of the Evidence for Five Counts of
## Criminal Attempt to Commit Invasion of Privacy

Finally, Appellant maintains that the evidence only supported his convictions for four counts of criminal attempt to commit invasion of privacy, not the five counts of which he was convicted. Appellant's Brief at 60-61.[8]

> This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder.

**Commonwealth v. Izurieta**, 171 A.3d 803, 806 (Pa. Super. 2017) (citations and internal brackets omitted) (some formatting).

During trial, A.M. testified that Appellant had attempted to record her in the shower at his home "[t]hree or four" times and in the shower of a camper at a campground "once or twice." N.T., 3/26/2018, at 88, 90. When viewed

---

[8] Appellant does not argue that any particular element of criminal attempt to commit invasion of privacy was not established; he merely disagrees with the total number of charges. **See** Appellant's Brief at 60-61. Therefore, any concerns about "preserv[ing] a challenge to the sufficiency of the evidence on appeal" by "stat[ing] with specificity the element or elements upon which the appellant alleges the evidence was insufficient" in the "appellant's Rule 1925(b) statement" are inapplicable to Appellant's final claim. **In re J.G.**, 145 A.3d 1179, 1189 (Pa. Super. 2016) (citation omitted).

in the light most favorable to the Commonwealth as verdict winner, *Izurieta*, 171 A.3d at 806, this evidence was not only sufficient to establish **five** convictions for attempted invasion of privacy, but, if A.M.'s maximum estimates were believed by the jury – *i.e.*, "four" times at Appellant's house plus "twice" in the camper – the evidence could have supported **six** convictions for attempted invasion of privacy. Thus, Appellant's final issue is meritless.

\* \* \*

Based on the foregoing, Appellant is not entitled to relief to any of his claims. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

P.J.E. Bender joins the Memorandum.

Judge Nichols Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2019

- 22 -